IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-CR-00180-RJC-SCR

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| COLBY EDWARD JOYNER | ) | |
| | ) | |

**THIS MATTER** is before the Court upon the invocation of Fifth Amendment rights by several witnesses the defendant intended to call during his jury trial. The Court orally quashed their subpoenas after hearing from the parties and witnesses and writes to expound upon its decision.

**I.    BACKGROUND**

The defendant, Colby Edward Joyner, proceeded to trial on charges of health care fraud in violation of 18 U.S.C. § 1347 (Count One) and making false statements relating to health care matters in violation of 18 U.S.C. § 1035(a) (Counts Two through Seven), or aiding and abetting those offenses. (Doc. No. 1: Indictment at 9-11). Mr. Joyner, a physician assistant, worked as an independent contractor for MedCare Staffing, Inc. (MCS) and allegedly made false representations in ordering genetic testing for Medicare beneficiaries. (Id.). As part of his defense, he planned to call witnesses from MCS, including co-owners Thomas Hardin and Rhonda Polhill; medical director Dr. Kevin Smith; and operations manager Sarah Smola,[1] as well as

---

[1] When introducing herself to the Court, she indicated that her last name is now Burkhalter. For consistency with the record, the Court will continue to refer to her as Ms. Smola.

MCS's client, Chris White. (Doc. No. 19: Motion for the Issuance of a Subpoena at 4; Doc. No. 41: Amended Witness List; Doc. No. 46: Second Amended Witness List).[2]

In preparation for the trial, the Court convened a status conference on May 2, 2023, and scheduled jury selection for June 5, 2023. The government anticipated that its case would take 3 days and asked to delay presenting its evidence until June 8 to accommodate an expert witness already subpoenaed to testify in other trials that week. The Court held a pretrial conference on June 2 where the government shortened its forecast to 2 days of evidence.

Prior to jury selection on Monday, June 5, the government informed the Court that counsel for Tom Harbin advised the parties that he planned to invoke his Fifth Amendment privilege. The Court stated it would address the matter when it came up. On Thursday, June 8, before opening statements, defense counsel advised the Court that counsel for two other witnesses had communicated with the parties about taking the Fifth. Defense counsel suggested waiting to address the issue, but affirmed he intended to enforce the subpoenas. The government asked the Court to consider whether questioning the witnesses outside the presence of the jury was needed.

After the end of the presentation evidence that day, the Court asked for a proffer of how long the government's case would last. The government responded that it expected 3 hours of direct on Friday, June 9. The Court did not require the

---

[2] The parties submitted some of the documents related to this issue by email when the Court's CM/ECF system was down on June 10 and 11, 2023. They have since been docketed.

defendant to state his intentions about presenting his case, but announced that it anticipated addressing the Fifth Amendment issue during lunch Friday. The Court directed defense counsel to make sure witnesses were ready to go Friday at 9:30 am. Defense counsel acknowledged the Court's intention and said he would communicate with them as soon as courtroom proceedings were done.

When the government rested its case as expected mid-day on Friday, the Court inquired of defense counsel about its witnesses. Counsel stated he had two witnesses ready to testify, neither of whom presented Fifth Amendment issues. When the Court confronted counsel about the absence of witnesses who may invoke, counsel responded that he sent a message that morning directing a witness to appear Monday, June 12, at 9 am. The Court reminded counsel that it clearly stated the day before that a jury-out hearing would be conducted on Friday, which the Court was then prepared to take up. Counsel replied that he did not interpret the direction that way. Based on the absence of the witnesses, the Court was required to recess the proceedings significantly early.

Over the weekend, counsel for Dr. Smith and Ms. Polhill filed a Motion to Quash in which he stated defense counsel informed them Friday evening to appear Monday, June 12. (Doc. No. 47 at 1). The witnesses' counsel claimed it was "physically impossible" for them to appear Monday because they had travelled to California when defense counsel previously directed them to appear Tuesday, June 13. (Id. at 2). Additionally, based on allegations against them in the defendant's Motion for the Issuance of a Subpoena, (Doc. No. 19), he reported that Dr. Smith and

3

Ms. Polhill would invoke their Fifth Amendment rights to avoid possible incrimination. (Doc. No. 47: Motion at 2). On Sunday, June 11, the defendant filed a Response alleging the roles of Dr. Smith, Ms. Polhill, Mr. White, and Ms. Smola in the scheme. (Doc. No. 48 at 1-7).

The Court held an evidentiary hearing Monday morning, June 12. Counsel for Mr. White informed the Court that he would assert the Fifth Amendment to any questions related to the criminal charges being tried. Ms. Smola appeared pro se and likewise said she would invoke her Fifth Amendment right as to any and all questions with respect to this trial. In the absence of Dr. Smith and Ms. Polhill, the Court relied on their Motion to Quash to find that each would assert the Fifth Amendment right based on the defendant's allegations against them. The Court released all four witnesses from their subpoenas on Fifth Amendment grounds. The Court also granted the Motion to Quash pursuant to Federal Rule of Evidence 611, finding that defense counsel's lack of transparency with the Court caused confusion with the witnesses' appearance and interfered with the Court's efficient presiding over the trial.

## II. DISCUSSION

### A. Fifth Amendment

An assertion of the Fifth Amendment privilege against self-incrimination is proper where a court determines that a witness has "reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The Supreme Court explained:

> To sustain the privilege, it need only be evident from the implications of the questions, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence."

*Id.* at 486-487. A witness reserves the ability to invoke the Fifth Amendment privilege even after pleading guilty to the same or similar conduct in a separate case. *United States v. Yurasovich*, 580 F.2d 1212, 1220 (3d Cir. 1978).

In making this determination, a Court is required to conduct "particularized inquiry into the legitimacy and scope of the witness' assertion of the privilege." *United States v. Sayles*, 296 F.3d 219, 223 (4th Cir. 2002). There are instances, however, in which a court may conclude that any answer to any possible, relevant question could be incriminating and grant blanket protection by not allowing the witness to testify. *United States v. Tsui*, 646 F.2d 365, 367-68 (9th Cir. 1981) (defendant sought "passing-the-blame questioning" of uncharged witness). Such a determination is sufficiently particularized if a court concludes from its knowledge of the case and the expected lines of questioning by counsel that the witness can assert the Fifth Amendment privilege in response to any relevant question. *Id.* at 368.

Courts have long held that neither the prosecution nor the defense may call a witness to the stand for the sole purpose of triggering invocation of the Fifth Amendment right against self-incrimination in front of the jury. *United States v. Lyons*, 703 F.2d 815, 818 (5th Cir. 1983); *United States v. Klinger*, 128 F.3d 705, 709

5

(9th Cir. 1997). Here, four defense witnesses indicated to the Court the intention to invoke their Fifth Amendment rights in response to all questions related to the case.

Mr. White, through counsel, expressed to the Court that he would invoke the Fifth Amendment in response to any questions related to the criminal charges at issue in this case. In October 2021, Mr. White pled guilty to health care fraud in the Middle District of Florida. Based on the evidence in this case and the positions the defendant took in pleadings and opening statement at trial describing him as a "fraudster," Mr. White could reasonably apprehend a real danger of self-incrimination in being questioned by the defendant. (Doc. No. 19: Def.'s Motion for the Issuance of a Subpoena at 5). Although Mr. White's plea agreement precludes further prosecution in a single district, the facts of this case suggest a series of events that could create potential criminal liability in other federal districts and state courts. Mr. White did not waive his Fifth Amendment right in his plea in the Middle District of Florida; therefore, the Court found that he had a valid assertion to any relevant questions the defense may ask. *See Yurasovich*, 580 F.2d at 1218 ("[I]f the witness is still subject to prosecution for other crimes which his testimony might tend to reveal, the privilege remains.").

Ms. Smola, who has not yet been charged in this case, informed defense counsel by phone and this Court during the evidentiary hearing that she would invoke her Fifth Amendment rights as to any and all questions with respect to the trial. Ms. Smola pointed to the defendant's memorandum "of false allegations," which asserted he innocently relied on Ms. Smola and other MCS employees who were aware of the

illegal activity taking place. (*See* Doc. No. 19: Def's Motion at 5). Although the defendant argued that this was no longer his theory of the case, the Court found Ms. Smola had reasonable cause to apprehend a danger of self-incrimination if she were to testify based on the evidence in the case, the defendant's opening statement, and his pleadings. Accordingly, she could properly assert her Fifth Amendment right with respect to any relevant question the defense was likely to ask.

In a Motion to Quash, witnesses Dr. Smith and Ms. Polhill indicated their intentions to assert their Fifth Amendment rights on the same grounds as Ms. Smola.[3] (Doc. No. 47). The defendant argued that the government is not investigating the witnesses further; therefore, they did not face any criminal liability. As with the other witnesses, the Court found that the evidence in the case and the positions taken by the defendant in his subpoena motion, his opening statement to the jury, and his Response to the Motion to Quash established that Dr. Smith and Ms. Polhill had reasonable cause to believe that each would face a danger of self-incrimination if called to testify. Thus, the Court granted their Motion to Quash, (Doc. No. 47), based on their proper assertion of the Fifth Amendment right to any question about the issues of the case.

**B.     Rule 611**

Alternatively, the Court quashed the subpoenas under Federal Rule of Evidence 611. From the pretrial conference on June 2, it was expected that the

---

[3] As discussed more fully below, the Court excused their absence from the evidentiary hearing on Monday, June 12, and relied on their motion based on defense counsel's side agreement with them not to appear until Tuesday, June 13.

government would rest its case on Friday, June 9. The Court informed the parties on Thursday, June 8, that it intended to hold the jury-out hearing to resolve the Fifth Amendment assertions the following day. Accordingly, the Court directed defense counsel to have the needed witnesses present at 9:30 am. After the government rested its case and the Court called for the hearing early Friday afternoon, none of the defense witnesses expected to take the Fifth was present. Defense counsel inexplicably informed the Court that he had instructed those witnesses to appear Monday morning, June 12. As a result of defense counsel's conduct, the Court was required to send the jury home significantly early on Friday and to reschedule the jury-out hearing for Monday.

When the Motion to Quash was filed over the weekend, it came to light that defense counsel previously informed at least Dr. Smith that he would not have to appear in court until Tuesday, June 13. That side agreement had never been disclosed to the Court even though counsel was aware that the government's case-in-chief would conclude on Friday, June 9, and the Court had directed him to have all witnesses present on that day. Dr. Smith and Ms. Polhill relied on the side agreement in travelling to California over the weekend and were not present on Monday, June 12.

Federal Rule of Evidence 611(a)(2) directs courts to exercise reasonable control over examining witnesses and presenting evidence to avoid wasting time. Here, defense counsel's side agreements were inconsistent with the Court's scheduled hearings, causing confusion and impeding the witnesses' appearance. Accordingly,

8

the Court quashed the subpoenas on the alternative ground of defense counsel's lack of transparency with the Court which interfered with its ability to preside over the trial efficiently.

### III. CONCLUSION

**IT WAS, THEREFORE, ORDERED** that the subpoenas for Rhonda Polhill, Dr. Kevin Smith, Sarah Smola, and Chris White be **QUASHED**, and the Motion to Quash, (Doc. No. 47), be **GRANTED**.

Signed: August 14, 2023

Robert J. Conrad, Jr.
United States District Judge